DA 15-0295

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 335

IN THE MATTER OF THE CONSERVATORSHIP
OF MINOR CHILDREN,

JORDON SOULE, KODY SOULE, AND RYLEE SOULE,
Protected Persons,

      Petitioners and Appellees,

    v.

MICHAEL SOULE,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause Nos. DG 13-46BX,
DG 13-47BX, and DG13-48BX
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Steve Reida, Landoe, Brown, Planalp & Reida, P.C., Bozeman, Montana

      For Appellee:

        Benjamin J. Alke, Paul S. Burdett, Goetz, Baldwin & Geddes, P.C.,
Bozeman, Montana

Submitted on Briefs:  September 30, 2015
Decided:  December 1, 2015

Filed:

                                          Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    J.S., K.S., and R.S. are minor children who have potential claims against their father and their father's business arising out of an automobile accident that killed their mother. Their father, Michael Soule, does not want to pursue the claims on his children's behalf, claiming that the family is currently financially secure and that further litigation would cause the children unnecessary trauma. The District Court determined that Michael has a conflict of interest with the children because he would be the named defendant in a suit filed on their behalf, and appointed a guardian ad litem to determine whether litigation is in the best interests of the Soule children. Michael appeals the appointment of the guardian ad litem. We affirm.

## ISSUE

¶2    We address the following issue on appeal:

¶3    Did the District Court abuse its discretion in appointing a guardian ad litem to determine whether the pursuit of certain legal claims would be in the best interests of the Soule children?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    On January 25, 2012, Michael and Jennifer Soule were driving home from a Montana Tavern Owners function at a Bozeman hotel when their vehicle rolled on the interstate. Both Michael and Jennifer were ejected from the vehicle; Jennifer was killed instantly. As a result of the accident, Michael was charged with vehicular homicide while under the influence, although Michael maintains he does not remember who was driving the vehicle at the time of the accident. The criminal charges against Michael

2

were eventually dismissed due to police misconduct, loss or destruction of critical evidence, and violations of Michael's constitutional rights.

¶5 The vehicle involved in the fatal accident was insured by Safeco. Following the accident, Safeco volunteered the $300,000 policy limit to be split three ways among Michael and Jennifer's three children, J.S., K.S., and R.S. Safeco offered the policy limits without requesting a release of either Michael or Jennifer. The children's maternal grandfather, Tom Reiner, petitioned the District Court for approval of the settlement and his appointment as conservator. The court appointed Reiner as conservator and limited his duties to the approval and oversight of settlement funds from Safeco.

¶6 On January 9, 2014, the District Court appointed attorney Benjamin Alke of Goetz, Baldwin & Geddes, P.C. to represent the minor children with respect to the proposed Safeco settlement. During a review of the proposed settlement, it occurred to Mr. Alke that the minor children may have additional legal claims that could be pursued. Specifically, the children may have claims against their father, Michael, and against Michael's business, Belgrade Liquor, which carries a commercial general liability policy with Traveler's Insurance with a limit of $1,000,000. The policy may provide coverage for claims against its insureds arising out of the accident that killed Jennifer Soule. Mr. Alke petitioned the District Court to appoint a guardian ad litem to determine if litigation is in the children's best interests, and counsel to pursue those claims on the children's behalf.

¶7 Initially, Michael did not object to Mr. Alke's application for the appointment of a guardian ad litem. However, on the day after the deadline for Michael to object, the

District Court dismissed the criminal charge pending against him. The court gave Michael 60 days to reevaluate his position. On February 17, 2015, Michael filed an amended response objecting to Mr. Alke's application for the appointment of a guardian ad litem. Michael contended that his family is financially secure and that pursuing further insurance coverage would result in allegations against him and his wife and his business, which would be traumatic for his children.

¶8 On March 23, 2015, the eldest of Michael's children, J.S., attempted suicide. J.S.'s long term prognosis and need for future care is unclear. Upon learning of J.S.'s suicide attempt, the District Court called a hearing to consider Mr. Alke's petition for the appointment of a guardian ad litem. Although Michael was not present at the hearing, his attorney preserved his objection to the appointment of a guardian ad litem. Following the hearing, the District Court appointed retired Judge Dorothy McCarter as guardian ad litem for the children and Mr. Alke as counsel to pursue any legal claims determined by the guardian ad litem to be in the children's best interests. Michael appeals the appointment of a guardian ad litem. We affirm.

### STANDARD OF REVIEW

¶9 We review a district court's appointment of a guardian ad litem for abuse of discretion. *In re Watson*, 283 Mont. 57, 60, 939 P.2d 982, 984 (1997) (*citing In the Matter of the Guardianship of Nelson*, 204 Mont. 90, 94, 663 P.2d 316, 318 (1983)). In determining whether a district court abused its discretion, we consider "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Henricksen v. State*, 2004 MT 20,

4

¶ 29, 319 Mont. 307, 84 P.3d 38 (citing *Jarvenpaa v. Glacier Electric Co-op.*, 1998 MT 306, ¶ 13, 292 Mont. 118, 970 P.2d 84). "In reviewing the District Court's determination, we will give paramount consideration to the best interests of the children." *In re Watson*, 283 Mont. at 60, 939 P.2d at 984 (citing § 72-5-223, MCA).

## DISCUSSION

¶10 *Did the District Court abuse its discretion in appointing a guardian ad litem to determine whether the pursuit of certain legal claims would be in the best interests of the Soule children?*

¶11 The District Court appointed a guardian ad litem to gather information about the children from school records, medical records, and counseling records, to determine whether pursuing further claims is in the children's best interests, and to pursue those claims if appropriate. Michael argues that the District Court abused its discretion in appointing a guardian ad litem to consider pursuing further claims by the Soule children against their father and the family business. Mr. Alke, on behalf of the children, counters that Michael has a conflict of interest with his children, given their potential claim against him, and that appointment of a guardian ad litem was necessary to determine the best interests of the children regarding potential litigation. We conclude that the question of whether the District Court abused its discretion in appointing a guardian ad litem in this case is best analyzed in three parts: whether the appointment of a guardian for the purpose of considering and possibly pursuing litigation was an abuse of discretion, whether authorizing the guardian to undertake certain duties was an abuse of discretion, and whether the appointment was in the children's best interests.

5

¶12 The District Court appointed a guardian ad litem under § 25-5-301, MCA. An appointment under this statute is in contemplation of litigation: "[w]hen a guardian ad litem is appointed by the court, the guardian ad litem must be appointed as follows: (1) when the minor is plaintiff, upon the application of the minor if the minor is 14 years of age or, if under that age, upon the application of a relative or friend of the minor." Section 25-5-301(1), MCA. In this case, the District Court appointed a guardian ad litem for the Soule children to determine whether initiating litigation against their father and the family business was in the best interests of the children. Such an appointment is in contemplation of litigation. Further, as required by the statute, the appointment was made upon the application of a friend of the minors, their court-appointed attorney, Mr. Alke. The District Court did not abuse its discretion in appointing a guardian ad litem for the purpose of considering and possibly pursuing claims deemed to be in the children's best interests. In fact, if the children were to pursue claims against their father and the family business, they could only do so through a guardian ad litem. Section 41-1-202, MCA.

¶13 The Dissent argues that the clear language of § 25-5-301, MCA, allows for the appointment of a guardian only when a minor is already a party to a proceeding, and that there is no authority for the appointment of a guardian for a minor child when no proceeding is pending before the court. Dissent, ¶ 23. In making this argument, the Dissent overlooks § 41-1-202, MCA, which provides: "A minor may enforce the minor's rights by civil action or other legal proceedings in the same manner as a person of full age, except that a guardian shall conduct the action or proceedings." Thus, a minor may

6

not commence an action without a guardian. Were we to accept as correct the position of the Dissent, a minor could defend against a suit brought against her with the aid of a guardian because litigation is already pending, but she would be powerless to *commence* litigation to enforce her rights.

¶14 An interpretation of a statute which gives it effect is preferred to one which makes it void. Section 1-3-232, MCA. In order to give effect to § 41-1-202, MCA, a minor must have the statutory right to commence a proceeding on her own behalf. But because a minor must have the assistance of a guardian to do so, § 25-5-301, MCA, must allow for the appointment of a guardian to commence litigation on the minor's behalf. This interpretation is further supported by the statutory language "when the minor is plaintiff." Section 25-5-301(1), MCA. Bearing in mind the rule of statutory construction that "[w]here there are several provisions or particulars [of a statute], such a construction is, if possible, to be adopted as will give effect to all," § 1-2-101, MCA, the phrase "when the minor is plaintiff" would be meaningless if a minor could never be a plaintiff. Thus, in order to give to effect to each provision of both § 41-1-202, MCA, and § 25-5-301, MCA, a court must have the power to appoint a guardian to commence litigation on behalf of a minor.

¶15 Turning to the duties of the guardian, the statute under which the District Court appointed a guardian ad litem for the Soule children does not list the general duties such a guardian should undertake. However, the statute outlining the appointment of a guardian ad litem to represent the interests of a minor child with respect to child support

7

and custody, § 40-4-205, MCA, does list the general duties of a guardian ad litem. Among those duties are:

> (a) to conduct investigations that the guardian ad litem considers necessary to ascertain the facts . . .; (b) to interview or observe the child who is the subject of the proceeding; . . . (d) to appear and participate in all proceedings to the degree necessary to adequately represent the child and make recommendations to the court . . .; and (e) to perform other duties as directed by the court.

Section 40-4-205(2), MCA. Similar investigatory and representative functions would be required of a guardian ad litem who is tasked under § 25-5-301, MCA, with considering whether to pursue litigation on behalf of minor children, so we look to the duties outlined by § 40-4-205, MCA to guide us in our assessment of the District Court's order in this case.

¶16 In its order appointing a guardian ad litem, the District Court authorized the guardian to act for the children in pursuit of claims determined by the guardian to be in the children's best interests, to maintain communication with interested family members regarding the status of any claims, and to access information necessary for pursuit of the claims, including but not limited to school records, medical records, and counseling records of the children. These activities are similar in nature to the duties imposed upon a guardian ad litem in a child support or custody context, and are essential to the guardian's execution of the tasks assigned to her by the court. Thus, the District Court did not abuse its discretion in authorizing the guardian ad litem in this case to engage in the listed activities.

8

¶17 Finally, in reviewing the appointment, we must be satisfied that the District Court gave "paramount consideration to the best interests of the children." *In re Watson*, 283 Mont. at 60, 939 P.2d at 984. The statute under which the guardian ad litem was appointed in this case does not specify what constitutes the "best interests" of a child. However, a guardian ad litem statute from another part of the Montana Code is illustrative. A statute on the appointment of a guardian or conservator under the Uniform Probate Code provides: "[t]he court may appoint as guardian any person whose appointment would be in the best interests of the minor." Section 72-5-223, MCA. We have interpreted that qualification to mean "that the person appointed must not have interests adverse to those of the child." *Krause v. Sisk (In re Krause)*, 2001 MT 37, ¶ 13, 304 Mont. 202, 19 P.3d 811 (citing *In re Watson*, 283 Mont. at 60, 939 P.2d at 984). We conclude the decision whether to appoint a guardian in the first place should be subject to a similar understanding of the "best interests" of a child; that is, the decision should not be made by someone whose interests are potentially adverse to those of the child.

¶18 In this case, Michael's interests are by definition potentially adverse to those of his children because he and his business would be the named defendants in a lawsuit filed on their behalf. Although there is no evidence that Michael is not a competent and caring father, the District Court was clearly motivated by the best interests of the Soule children when it appointed a guardian ad litem over Michael's objection to explore whether to sue Michael and the family business on behalf of the children.

¶19 We recognize the fundamental right of a parent to make decisions in the best interests of the family, but we decline at this juncture to foreclose exploration of whether

further litigation to secure additional insurance proceeds for the benefit of the Soule children is economically necessary. This will be for the Guardian Ad Litem to determine. The points made by the Dissent concerning the rights of a fit parent, Dissent ¶¶ 25-26, are matters that should also be considered by the Guardian Ad Litem as she explores whether an action should be commenced.

¶20 Considering the purpose of the appointment, the duties imposed on the guardian, and the best interests of the children, the District Court did not abuse its discretion in appointing a guardian ad litem for the Soule children.

**CONCLUSION**

¶21 For the foregoing reasons, we affirm the District Court's April 7, 2015 Order appointing the Honorable Dorothy McCarter, retired, as Guardian Ad Litem for J.S, K.S. & R.S.

/S/ PATRICIA COTTER

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

Justice Laurie McKinnon, dissenting.

¶22 I dissent. In my view, statutory requirements were not followed when the District Court appointed a guardian ad litem for the children and for this reason, an abuse of discretion must necessarily be found. *In re Guardianship of Nelson*, 204 Mont. 90, 94, 663 P.2d 316, 318 (1983).

10

¶23 The Court construes the requirements of § 25-5-301, MCA, as allowing for an appointment "in contemplation" of litigation, Opinion ¶ 12, despite the clear language of § 25-5-301, MCA, allowing for an appointment only when a minor is a "plaintiff," a "defendant," or a "party to an action or proceeding." A guardian ad litem is "[a] guardian, usually a lawyer, appointed by the court *to appear in a lawsuit* on behalf of an incompetent or minor party." *Black's Law Dictionary*, 822 (Bryan A. Garner ed., 10th ed. 2014) (emphasis supplied). There is no authority for a court to appoint a guardian ad litem for minor children, against the wishes of the children's only surviving parent, when no proceeding is pending before the court. While we have considered potential conflicts of interest concerning a parent which may necessitate an appointment to protect the children's interest in pending litigation, it has always been within the context of protecting the minor's interests in litigation currently before the court. *See In re Estate of C.K.O.*, 2013 MT 72, 369 Mont. 297, 297 P.3d 1217 and *In re Watson*, 283 Mont. 57, 939 P.2d 982 (1997). We have never appointed a guardian ad litem absent a pending proceeding simply for the purpose of allowing the guardian ad litem to investigate potential claims against a parent who is fit.

¶24 It is important to note that the initial guardian ad litem's involvement with the children was pursuant to a limited conservatorship proceeding and that the purpose for establishing the limited conservatorship was realized several months prior to the instant petition for appointment of another guardian ad litem. The order appointing a conservator specifically recognized that all parties agreed that "the scope of the conservatorship should be limited to oversight of the settlement funds." Consistent with

this stipulation, the District Court limited the conservatorship as follows: "The scope of Mr. Reiner's duties as Conservator shall be limited to the approval of the settlement funds from Safeco and the oversight of the same in a custodial, fee-based account established by Dave Shepard with Edward Jones and maintained in accordance with the recommendations made by Mr. Shepard." Therefore, any authority and justification for the court's interference into the private lives of this family was limited by the terms of the conservatorship order agreed to by the father. The District Court did not authorize the guardian to have any authority outside the confines of the limited conservatorship which was established as a vehicle for receipt of the Safeco funds. The Safeco settlement funds had been received and deposited and all that remained was for the conservator to file annual accountings. We are incorrect to extend the limited representative capacity of the guardian ad litem, initially allowed through agreement of the father, to investigate insurance claims against the father, his deceased wife, and father's business, and for the purpose of satisfying the "friend" criteria of § 25-5-301, MCA.

¶25 Significant to the instant proceedings is the fact that the father has never been declared an unfit parent. The intrusion into this family's life allowed by the court is to allow investigation of potential insurance claims, despite every indication that the family is financially sound and father has a profitable business. In pursuing more insurance recovery, it will be necessary to allege negligence by the father, his deceased wife, or both, and to delve further into the inquiry of which parent was driving. The children will likely be involved in discovery as they are peculiarly situated to know the habits and customs of their parents, particularly as they relate to who might have been driving.

12

Here, the District Court recognized the conflicts within the family which may result from contested insurance coverage litigation. Absent statutory authority allowing a court to interfere, there is no justification for appointment of a guardian ad litem to usurp a father's decisions regarding what is in his children's best interests.

¶26    It is axiomatic that parents are allowed to make decisions, without interference by this Court, concerning the well-being of their family. The fundamental right to parent includes the interest of the parent in the "companionship, care, custody and *management* of his or her children," *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 2012 (1972) (emphasis supplied), and it is beyond peradventure that "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40, 94 S. Ct. 791, 796 (1974). "So long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68-69, 120 S. Ct. 2054, 2061 (2000). It is not our place to interfere with the decisions of a parent absent evidence that the parent is unfit or litigation involving the child is pending. Parents on a regular basis must make difficult decisions on behalf of their children, many of which involve conflicts of interest. If conflicts of interest disable a parent from making financial decisions about his child, as we hold here, then we have begun the slippery descent of attempting to decide what financial conflicts appropriately require consideration by a guardian ad litem. The authority to interfere in the personal

13

affairs of family, for this reason alone, is narrowly circumscribed by statute—and, more particular to these proceedings, by the order granting a limited conservatorship.

¶27 The court sets forth only part of the standard of review. The correct, and entire, statement of the standard of review is: "*subject to statutory restrictions*, the selection of the person to be appointed is a matter which is committed largely to the discretion of the appointing court." *Nelson*, 204 Mont. at 94, 663 P.2d at 318 (emphasis supplied). Our review thus requires us to first determine whether there was statutory authority allowing for appointment of a guardian. Section 25-5-301, MCA, does not allow appointment for the purpose of investigating claims against a fit parent. Here, there is no statutory authority for appointment of a guardian ad litem. The guardian ad litem, based upon the specific terms of the order granting the limited conservatorship, cannot extend his representative capacity for purposes of investigating new claims not pending before the court.

¶28 I dissent.

/S/ LAURIE McKINNON